**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| **DEBORAH HARRISON KHATANA,** * | |
| Plaintiff, * | |
| v. * | Case No.: PWG-15-1664 |
| **WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,** * | |
| Defendant. * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

From 2002 until 2014, Plaintiff Deborah Harrison Khatana was employed by Defendant Washington Metropolitan Area Transit Authority ("WMATA"). At the time of her termination, she worked as a garage fleet servicer at WMATA's Bus Maintenance and Fleet Service, Western Division ("Western"). On April 23, 2014, Harrison Khatana struck a fuel hose with the right-side mirror of a bus while positioning the vehicle for fueling, causing the hose to detach from the fuel dispenser. Although Harrison Khatana reported a problem with the fuel hose, she did not tell her superiors that the bus she was driving had any role in its detachment. But after reviewing video footage of the incident, on May 19, 2014, WMATA determined that Harrison Khatana had failed to comply with its accident-reporting policies and terminated her employment. Following her termination, Harrison Khatana brought suit in this Court, alleging that the termination constituted gender discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2 ("Title VII") (Count I); disability discrimination in violation of the Rehabilitation Act of 1973 (Count II); and retaliation in violation of the

Case 8:15-cv-01664-PWG   Document 44   Filed 02/27/17   Page 2 of 13

Rehabilitation Act (Count III).[1]  Am. Compl., ECF No. 17.  She also alleges that a hostile work environment existed at Western and that WMATA discriminated on the basis of sex when it failed to promote her.  *Id.*  WMATA moves for summary judgment on all of these claims.  Def.'s Mem., ECF No. 38.  Harrison Khatana has filed an Opposition, Pl.'s Opp'n, ECF No. 39, to which WMATA has replied, Reply, ECF No. 41.  No hearing is necessary.  Loc. R. 105.6 (D. Md.).  Because I find that Harrison Khatana has failed to produce any evidence suggesting that WMATA's legitimate non-discriminatory and non-retaliatory reason for terminating her employment was pretextual nor any evidence supporting her hostile-work-environment or failure-to-promote claims, I will grant WMATA's Motion.

## Background

On April 23, 2014, while working as a Garage Fleet Servicer at Western, Harrison Khatana drove Bus #7112 through a service lane, where buses are refueled, cleaned, and washed.  Arbitration Tr. 30:3–5, J.A. 15.[2]  While maneuvering the bus, the vehicle's right-side mirror struck a fuel hose and dragged it a short distance.  Bus #7112 Video, Cameras 3 & 9, at 17:59:15–35, Jt. Ex. 1;[3] Harrison Khatana Dep. 78:20–79:7, J.A. 21 (acknowledging that the surveillance video shows that the bus's mirror "touched" the fuel hose).  After parking, Harrison

---

[1] Harrison Khatana also initially alleged that the termination interfered with and retaliated against her for asserting her rights under the Family and Medical Leave Act and violated public policy.  Am. Compl.  I dismissed those counts pursuant to Fed. R. Civ. P. 16(c).  ECF Nos. 27, 37.

[2] Citations to J.A. refer to the Joint Appendix that the parties submitted in the case, which appears at ECF No. 42-1 to-3.

[3] Harrison Khatana argues that video should be excluded from evidence, claiming that it was never provided to her.  Pl.'s Opp'n 24.  WMATA tried to mail a hard copy of the video to Plaintiff's counsel on June 1, 2016, but the envelope was returned as undeliverable.  ECF No. 41-1.  WMATA then emailed a digital copy of the video to Plaintiff's counsel on June 20, 2016.  ECF No. 41-2.  I am satisfied that a copy of the video was produced to Harrison Khatana, and, therefore, it will not be excluded.

Khatana exited the bus and dragged the hose to the rear of the vehicle, *id.* at 17:59:35–18:00:14, but found that the hose would not dispense fuel, Arbitration Tr. 107:10–13, J.A. 34.

Fuel hose detachments occur frequently at Western. Arbitration Tr. 36:15, J.A. 16; Harrison Khatana Dep. 73:14–22, J.A. 87. Sometimes, fuel pressure or a bad connection causes hoses to detach from the dispenser on their own, a problem Western personnel refer to as a "pop off." Arbitration Tr. 38:11–17, 102:12–14, J.A. 17, 33. Detachments also occur when drivers pull buses forward with the fuel nozzle still inserted into the bus's gas tank, a problem known as a "pull off." Arbitration Tr. 33:22–34:10, 102:20–22, J.A. 15–16, 33. On the day prior to the incident, the Superintendent of Western Bus Maintenance, John Coleman, issued a memorandum to all Western personnel reporting several instances of "fuel hose breakaway couplings [being] pulled apart and service lane personnel . . . attempt[ing] to re-attach them." Memorandum from John Coleman, Jr., to Western Personnel, J.A. 142. Coleman's memo instructed that "[a]ny time service lane equipment is damaged, the supervisor is to be notified and any repair actions will be scheduled and/or authorized by him or her." *Id.* Coleman issued the memo because Western personnel cannot properly repair fuel hoses if they are under the impression that a "pop off" rather than a "pull off" caused a disconnection. Arbitration Tr. 77:15–78:7, J.A. 26–27. Timely accident reports also allow WMATA to test employees for drug and alcohol use to ensure safe operation of equipment. *Id.* at 44:18–45:14, 78:8–11, J.A. 18, 27.

After struggling to fuel her bus, Harrison Khatana requested assistance from the lead person on her lane, Jeff Winfree. Harrison Khatana Dep. 34:1–5; Arbitration Tr. 107:13–14, J.A. 34. Harrison Khatana did not inform Winfree that the bus had come into contact with the fuel hose. Based solely on the hose's physical appearance, Winfree concluded that a "pop off" had occurred. Arbitration Tr. 107:20–21, J.A. 34; Harrison Khatana Dep. 72:13–14, J.A. 87.

Winfree notified Kelvin Rufus, the lead maintenance staff person, who then contacted the shift supervisor, James Libscomb. *Id.* at 36:18–37, J.A. 16; Lipscomb Statement, J.A. 144; Rufus Statement, J.A. 145. Rufus and Lipscomb then inspected the fuel line, and Lipscomb ordered line staff to reconnect the fuel hose. Lipscomb Statement, J.A. 144. Lipscomb recalls Harrison Khatana personally telling him that a "pop off" had occurred. Arbitration Tr. 38:8–10. Harrison Khatana maintains that she did not speak to Lipscomb that day, but asserts that Winfree informed Lipscomb that a "pop off" had occurred based on his own diagnosis of the problem. *Id.* at 121:8–10, J.A. 37; Harrison Khatana Dep. 74:8–12, J.A. 88. Harrison Khatana never filed an incident report with Lipscomb nor informed him that her bus had come into contact with the fuel hose. Harrison Khatana Dep. 72:5–7.

Lipscomb informed Superintendent Coleman, based on the information that he had at the time, that a "pop off" had occurred. Email from James Lipscomb, to John O. Coleman (Apr. 23, 2014, 6:11 P.M.), J.A. 143. Coleman requested that Lipscomb gather closed-circuit video of the incident. Arbitration Tr. 71:19–21, J.A. 25. It is standard WMATA procedure to review video of fuel-hose-detachment incidents. *Id.* at 41:7–9, J.A. 17. Coleman reviewed the video and concluded that a "pull off" rather than a "pop off" caused the fuel-hose detachment. *Id.* at 72:4–8, J.A. 25. Coleman reviewed the video with Lipscomb, who agreed that a "pull off" had occurred. *Id.* at 41:10–42:10, 72:18, J.A. 17–18, 25. Coleman determined that Harrison Khatana was aware of the "pull off" because of the hose's distance from its normal storage spot when she picked it up to fuel the bus and because she looked at the garage ceiling as she dragged the hose to the rear of the bus. *Id.* at 93:7–94:5, J.A. 33–34. In view of the discrepancy between Lipscomb's contemporaneous understanding of what happened and what the video depicted, the two men decided to interview Harrison Khatana. *Id.* at 72:19–22, J.A. 25. The interview

occurred on May 14, 2014, and Harrison Khatana maintained that she did not realize that the bus caused the detachment and signed a statement to that effect. *Id.* at 73:5–7, J.A. 25; Harrison Khatana Statement, J.A. 146 ("I Harrison Khatana have no knowledge of the alleged accident that occurred on 4/23/14 . . . .").

Five days after the interview, WMATA suspended Harrison Khatana for having two accidents in a single calendar year, Accident Report Form, J.A. 4–5, and terminated her employment, Memorandum from John Coleman, to Deborah Harrison Khatana (May 19, 2014), J.A. 2–3.[4] Harrison Khatana's suspension never took effect due to her termination. Arbitration Tr. 85:19, J.A. 28. Harrison Khatana filed a grievance regarding the termination through her union, and a neutral arbitrator upheld the termination, determining that Harrison Khatana "deliberately failed" to report the contact between the bus she was driving and the fuel hose "when she only informed [Winfree] of the problem with the fueling rather than explaining the circumstances leading up to that problem" and that she "knew an accident/incident occurred." Arbitration Decision 7–8, J.A. 153–54. On June 14, 2014, Harrison Khatana also filed a Charge of Discrimination with the D.C. Office of Human Rights and the Equal Employment Opportunity Commission (EEOC). Charge of Discrimination, J.A. 156–57. The EEOC issued Harrison Khatana a right-to-sue letter, Def.'s Mem. 8, and she filed suit in this Court, Compl., ECF No. 1. WMATA now seeks summary judgment on all of Harrison Khatana's claims.

---

[4] Harrison Khatana objects to the inclusion of both the Accident Report and Termination Letter in the record on hearsay and authenticity grounds. ECF No. 40. Both documents are public records and therefore fall under the public-records hearsay exception and are self-authenticating. Fed. R. Evid. 803(8), 902(1)–(2), (4). And even if not self-authenticating, there is no doubt that they could be readily authenticated, and therefore are readily presentable in a from that would be admissible. Accordingly, the documents may be considered for summary judgment purposes. Fed. R. Civ. P. 56(c)(2). And though both documents are photocopies of the originals, "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Fed. R. Evid. 1003. Both documents are therefore admissible.

**Standard of Review**

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see also Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

**Discussion**

Wrongful Discharge Claims

Harrison Khatana asserts that WMATA terminated her (1) because of her sex; (2) because of her alleged disability; and (3) in retaliation for her efforts to secure reasonable accommodation for that disability. Am. Compl. ¶¶ 96, 111, 117. Title VII prohibits employers from "discriminat[ing] on the basis of . . . sex," 42 § 2000e-2(a)(1), and the Rehabilitation Act prohibits recipients of federal funding, such as WMATA, from discriminating against an "otherwise qualified individual with a disability . . . solely by reason of her or his disability." 29 U.S.C. § 794(a). The Rehabilitation Act also incorporates the American with Disability Act

(ADA)'s anti-retaliation provision, 29 U.S.C. § 794(d), which prohibits "discrimination against any individual because [she] has opposed any act or practice made unlawful by" the ADA, 42 U.S.C. § 12203(a). Under all three wrongful-termination theories, when the record contains no direct evidence of discrimination or retaliation, as is the case here, the plaintiff may prove that the employer acted with an unlawful motive by indirect evidence through the *McDonnell Douglas* burden-shifting framework. *See Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216–17 (4th Cir. 2016). Under that test:

> (1) the plaintiff must first establish a prima facie case of employment discrimination or retaliation; (2) the burden of production then shifts to the employer to articulate a non-discriminatory or non-retaliatory reason for the adverse action; (3) the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the stated reason for the adverse employment action is a pretext and that the true reason is discriminatory or retaliatory.

*Id.* at 216; *see also McDonnell Douglas Corp.*, 411 U.S. 792, 802, 804 (1973); *Perry v. Comput. Scis. Corp.*, 429 F. App'x 218, 219–20 (4th Cir. 2011) ("Disability discrimination and retaliation claims under the ADA and Rehabilitation Act are evaluated under the *McDonnell Douglas* 'pretext' framework." (citations omitted)).

Assuming that Harrison Khatana can establish a *prima facie* case for any of her three wrongful termination claims, she still cannot prevail because she has failed to produce any evidence rebutting WMATA's legitimate non-discriminatory and non-retaliatory reason for her termination. WMATA asserts that it terminated Harrison Khatana for failing to report that her bus came into contact with the fuel line, causing a "pull off." Def.'s Mem. 12. WMATA's Employee's Handbook instructs personnel to file a "full report of every accident and every incident whether happening on or near a vehicle . . . on the day the accident or incident happens." WMATA, Department of Bus Services, Employee's Handbook § 1.33.1, J.A. 141. The Handbook also warns that "[f]ailure to promptly report an accident or incident, or any attempt to

conceal or misrepresent facts is an extremely serious violation of rules and *will result in dismissal*." *Id.* (emphasis added). It could not be clearer. Harrison Khatana's termination letter cites her failure to report the April 23, 2014, incident as the reason for dismissal, referencing the relevant portion of the Handbook. Memorandum from John Coleman, Jr., to Deborah Harrison Khatana 1–2 (May 19, 2014), J.A. 2–3. Harrison Khatana challenged the termination before a neutral arbitrator who determined that she "deliberately" violated § 1.33.1 of the Handbook "when she only informed the Leadperson of the problem with fueling rather than explaining the circumstances leading up to that problem." Arbitration Decision 7, J.A. 153.

Harrison Khatana disputes that WMATA has put forth a legitimate non-discriminatory or non-retaliatory reason for her dismissal because the employer's asserted reason for dismissal is "wholly contradictory" with the discriminatory and retaliatory reasons she believes motivated the termination. Pl.'s Opp'n 12–13. This argument misunderstands *McDonnell Douglas*'s burden-shifting framework. The employer's "burden is one of production, not persuasion." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). WMATA has satisfied its burden of production by furnishing evidence that it terminated Harrison Khatana for failing to report an incident pursuant to the clear terms of its Employee's Handbook. Thus, in order to survive summary judgment on her wrongful termination claims, Harrison Khatana must produce evidence from which a reasonable factfinder could conclude that WMATA's asserted basis for termination was pretextual. *Guessous*, 828 F.3d at 216.

As evidence of pretext, Harrison Khatana asserts that "WMATA has not produced any evidence that a mechanic ever came to fix a broken hose or fuel pump . . . [and] has not produced any mechanical report." Pl.'s Opp'n 22. But WMATA does not contend that it fired Harrison Khatana because of the accident itself, but rather because of her failure to report the incident.

Def.'s Mem. 12. Thus, the absence of evidence of fuel-line damage is not inconsistent with WMATA's asserted basis for termination, and it is curious that Harrison Khatana should make this argument since she herself reported that the fuel hose had been damaged (but not now).

Next, Harrison Khatana disputes that the contact between the bus and fuel hose that results in a "pull off" amounts to an "accident" or "incident" under § 1.33.1 of the Employee's Handbook. Pl.'s Opp'n 8–9. This amounts to semantic quibbling, and Harrison Khatana's union representative argued this point (unsuccessfully) at length in arbitration. Arbitration Tr. 12:21–14:9, J.A. 10–11, and the neutral arbitrator concluded that the "pull off" did amount to an incident that Harrison Khatana should have reported, *see* Arbitration Decision 7, J.A. 153. Even if a neutral arbitrator had not already determined that the incident should have been reported, Harrison Khatana has furnished no evidence that WMATA has failed to classify "pull offs" as incidents requiring a report on other occasions, and her argument is further undermined by Coleman's letter issued the day before the incident, which specifically instructed employees to notify supervisors when "pull offs" occurred. *See* Memorandum from Coleman, to Western Personnel (Apr. 22, 2014), J.A. 142. Harrison Khatanna also argues that she satisfied her reporting requirements by alerting Winfree that the fuel dispenser was not working properly, but this explanation was both evasive and incomplete. Pl.'s Opp'n 22–23. And, again, the neutral arbitrator rejected this argument. Arbitration Decision 5, J.A. 151 ("[Harrison Khatana] deliberately failed to [report] when she only informed the Leadperson of the problem with fueling rather than explaining the circumstances leading up to that problem."). And as with her interpretation of what constitutes an accident, Harrison Khatana provides no evidence that other WMATA employees have satisfied the reporting requirements while omitting similar details.

9

Finally, Harrison Khatana argues that male employees have gotten into accidents without being terminated and also claims that she "was the only person terminated [at Western] in the preceding five years." WMATA has indeed disclosed that no Western employees besides Harrison Khatana were fired in the five years prior to her termination. Def.'s Supp. Answer to Pl.'s Interrog. No. 8. But I cannot infer from this fact alone that other employees who failed to report accidents or incidents retained their jobs. Additionally, the record does contain evidence of accidents involving male Western employees. Harrison Khatana testified in her deposition that an employee named Keynon had an accident, Dep. 85:1–17, J.A. 90, but she did not testify that he failed to report the accident. Another fleet servicer, Katrina Straughn, testified in her deposition that Winfree had an accident, but she specifically indicated that Winfree reported the accident. Straughn Dep. 18:20–19:17. Thus, neither of these two accidents cast doubt on WMATA's asserted basis for terminating Harrison Khatana.

Although not specifically asserted as evidence of pretext, Harrison Khatana repeatedly contended in her arbitration testimony and in her deposition that, at the time of the incident, she believed that the fuel hose had detached due to a "pop off" rather than a "pull off" and that her belief was confirmed by Winfree's conclusion upon visual inspection that a "pop off" had occurred. Arbitration Tr. 105:16–21, 111:4–17, J.A. 33, 35; Harrison Khatana Dep. 71:22–72:14, J.A. 87. The record is clear, however, that Coleman and Winfree found her explanation incredible, and the neutral arbitrator shared their assessment. Arbitration Tr. 59:22–60:20, J.A. 16, 93:7–98:5, J.A. 31–32; Arbitration Decision 4, J.A. 150 ("It is hard to reconcile [Harrison Khatana's] claim of ignorance with the video recording."). While Harrison Khatana may strenuously disagree with WMATA's conclusion that she caused a "pull off," the record lacks any evidence from which I could conclude that WMATA was insincere in its judgment.

Harrison Khatana has failed to produce any evidence suggesting that WMATA's decision to discharge her for failing to report a "pull off" was pretextual. Accordingly, I will grant summary judgment to WMATA on each of Harrison Khatana's three wrongful discharge claims.

## Failure to Promote

WMATA argues that Harrison Khatana's failure-to-promote claim is time barred because she fails to specify any date on which she applied for or WMATA refused to grant her a requested promotion. Def.'s Opp'n 14. Title VII requires a claimant to file a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) "within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). "[D]iscrete discriminatory acts" such as an employer's failure to promote an employee because of her sex "are not actionable if time barred." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Harrison Khatana's Charge of Discrimination, which she filed with the EEOC, states, "I feel I have continually been *retaliated against* in the form of being passed up for promotional opportunities and desirable shift assignments, most recently in May 2014." EEOC Charge, J.A. 156 (emphasis added). Thus, while Harrison Khatana's EEOC charge did complain of retaliatory non-promotion that allegedly occurred within the 180-day timeframe, she did not complain that WMATA denied her any promotion because of her sex. And her Amended Complaint only alleges that WMATA engaged in sex discrimination, not retaliation, by failing to promote her. Am. Compl. ¶¶ 36, 38, 39, 42, 93, 100. Thus, Harrison Khatana's failure-to-promote claim is time barred.

## Hostile Work Environment

Harrison Khatana's Amended Complaint appears to allege a hostile-work-environment claim, Am. Compl. ¶ 14, which WMATA contends cannot survive summary judgment. Def.'s

Mem. 16–18. The Opposition contains scattered references to hostility or a hostile work environment. Pl.'s Opp'n 7 ("[A male employee] retorted that [Harrison Khatana] should leave him the hell alone or he was going to kick her ass. [He] was not even cautioned by WMATA for using such inappropriate or hostile language."), 13 ("[Harrison Khatana's] job got hostile . . . ."), 16 ("The work environment became hostile . . . ."), 21 ("[T]he job got hostile . . . ."). But Harrison Khatana never even attempts to prove the elements of a hostile-work-environment claim. *See Ocheltree v. Scollon Prods, Inc.* 335 F.3d 325, 331 (4th Cir. 2003) ("To establish a Title VII claim for sexual harassment in the workplace, a female plaintiff must prove that the offending conduct (1) was unwelcome, (2) was based on her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer."). "Failure to address a defendant's arguments for summary judgment in an opposition brief is itself sufficient grounds to grant the defendant's motion." *Bost v. Brad*, No. 12-2544, 2013 WL 5308275, at *7 (D. Md. Sept. 18, 2013) (citing *Mentch v. E. Sav. Bank, FSB*, 949 F. Supp. 1235, 1247 (D. Md. 1997)). I will therefore grant summary judgment on the hostile-work-environment claim.

## Conclusion

Each of Harrison Khatana's three wrongful discharge claims fail because she has failed to provide any evidence rebutting the legitimate non-discriminatory and non-retaliatory reason put forth by WMATA that it terminated her employment for failing to report that the bus she was driving caused a fuel hose to disconnect from its dispenser. Furthermore, her failure-to-promote claim fails because she did not timely complain in her EEOC charge that WMATA's failure to promote her constituted sex discrimination. Finally, her hostile-work-environment claim fails because she has not responded to WMATA's argument that she has not produced sufficient


evidence to support the claim. For these reasons, I will grant WMATA's Motion and enter judgment in its favor on all of Harrison Khatana's claims.

A separate Order follows.

Dated: February 27, 2017                                             /S/
                                                                     Paul W. Grimm
                                                                     United States District Judge

jlb